IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES SCHNEIDER, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 15-3129 |
| PHILADELPHIA GAS WORKS, | : | |
| | : | |
| Defendant. | : | |
| | : | |
| | : | |

### MEMORANDUM

Tucker, C.J.                                                                                                    November _30_, 2016

  Presently before the Court are Defendant's Motion for Summary Judgment (Doc. 21), Plaintiff's Opposition to Defendant's Motion for Summary Judgment (Doc. 27), Plaintiff's Response to Defendant's Statement of Material Facts (Doc. 28), Defendant's Reply to Plaintiff's Response to Motion for Summary Judgment (Doc. 29), and Plaintiff's Sur-Reply Brief in Further Opposition to Defendant's Motion for Summary Judgment (Doc. 33). Upon consideration of the parties' motions and for the reasons set forth below, Defendant's Motion for Summary Judgment is DENIED.

### I.  FACTUAL BACKGROUND

  In his Complaint, Plaintiff James Schneider ("Plaintiff") alleges that his employer, Defendant Philadelphia Gas Works ("Defendant"), violated the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA") and the Pennsylvania Human Relations Act, 43 P.S. § 951, *et seq.* ("PHRA"). Plaintiff alleges Defendant violated the ADA and PHRA by (1) discriminating against him on the basis of his disability and failing to accommodate his disability, and (2) retaliating against Plaintiff for requesting reasonable accommodation.

Plaintiff worked for Defendant from July 16, 2003 to May 13, 2014. Compl. ¶ 10 (Doc. 1). During that time, Plaintiff held various positions and was promoted three times. *Id.* at ¶ 11. Plaintiff last held the position of Personnel Supervisor. *Id.* Plaintiff's job responsibilities included sedentary work, such as coordinating the schedules of Defendant's service technicians. Def.'s Mot. Summ. J., Ex. B (Doc. 21).

On or about October 7, 2013, Plaintiff suffered a heart attack caused by his Cardiac Artery Disease ("CAD"). Compl. ¶ 12. On October 9, 2013, Plaintiff contacted his supervisor Lisa Wooding, told her about his disease, and requested a medical leave of absence to accommodate his CAD disability. *Id.* at ¶ 13. Defendant asserts Plaintiff told Wooding that he had suffered a heart attack and requested to take a medical leave without discussing his disability. Answer ¶ 13 (Doc. 5).

Plaintiff claims that between October 9, 2013 and April 2014 he updated Defendant about his condition at least once a week. Compl. ¶ 14; Pl.'s Resp. Def.'s Mot. Summ. J., Ex. A, 68:4-16; 109:17-22 (Doc. 27). Conversely, Defendant claims that Plaintiff was absent between October 2013 and December 2013, and failed to submit requisite documents accounting for his absence during that time. Def.'s Mot. Summ. J., Ex. D PGW000275. On or about December 5, 2013, Plaintiff claims he faxed Defendant about his condition and his desire to return to work after meeting with his cardiologist, Dr. McDonald. Compl. ¶ 14. Defendant claims this fax was a copy of Plaintiff's application for short-term disability benefits through his insurance provider Cigna, stating that Plaintiff "cannot return to work" and no accommodations would allow him to return at that time. Def.'s Mot. Summ. J., Ex. A, 76:12-23; Ex. E.

In January 2014, Plaintiff sent a second Cigna form to Defendant's medical department. Def.'s Mot. Summ. J., Ex. F. On March 10, 2014, Plaintiff sent an updated letter to Cigna,

asserting his inability to work at that time. Def.'s Mot. Summ. J., Ex. LL. On March 26, 2014, Defendant sent Plaintiff a letter requesting an update about his condition. Pl.'s Resp. Def.'s Mot. Summ. J., Ex. E. In response, Plaintiff sent a doctor's note indicating the next update would be available on May 15, 2014. Pl.'s Resp. Def.'s Mot. Summ. J., Ex. F. On April 24, 2014, Plaintiff received a letter from Defendant requesting a return-to-work date, diagnosis, and prognosis. Compl. ¶ 16. The letter stated that failure to provide this information by May 5, 2014 would result in termination.

### A. April 25, 2014 Phone Call

On April 25, 2014, Plaintiff called Defendant's Director Gioioso to discuss the April 24th letter. Plaintiff claims that he informed Gioioso that he could likely return to work on light duty status after his May 15, 2014 appointment. Pl.'s Resp. Def.'s Mot. Summ. J., Ex. A, 114:12-21. Gioioso replied that "as a company [we] cannot wait for [you] to come back to work[,]" and that Defendant's physician stated the job was too stressful for him. *Id.* at 117:1-14. Gioioso claimed Plaintiff had no other options and that a termination letter would be sent in the mail. *Id.* at 181:15-18. Plaintiff believed the April 25th phone call effectively terminated him, and requested to remain on Defendant's insurance plan until he was added to his wife's insurance. Compl. ¶ 17.

Defendant claims that Plaintiff told Gioioso during the call that he could not come back to work at all. Pl.'s Resp. Def.'s Mot. Summ. J., Ex. B, 42:19-43:19. Gioioso testified that Plaintiff stated that he knew he would get medically separated and requested to remain on Defendant's insurance plan until he was added to his wife's insurance plan. *Id.* Gioioso claims he agreed Plaintiff could remain on the plan, and that a termination letter would be sent out once Plaintiff was successfully added to his wife's plan. Def.'s Mot. Summ. J., Ex. V, 43:16-19.

Plaintiff received the termination letter on May 13, 2014, and was subsequently replaced at work by a non-disabled individual. Compl. ¶¶ 18-19. In September 2014, Plaintiff contacted John Roomey, a former supervisor, about open positions. Pl.'s Resp. Def.'s Mot. Summ. J., Ex. A, 160:19-20. Roomey contacted Gioioso stating Plaintiff had "a clean bill of health" and Gioioso replied he doubted Plaintiff had a clean bill of health. Pl.'s Resp. Def.'s Mot. Summ. J., Ex. B, 54:1-3.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as matter of law." A "material" fact is one "that might affect the outcome of the suit under the governing law[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The movant has the initial "burden of identifying specific portions of the record that establish the absence of a genuine issue of material fact." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015). "Where the defendant is the moving party, the burden is on the defendant to show that the plaintiff has failed to establish one or more essential elements of [his] case." *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013). If the movant sustains its initial burden, "the burden shifts to the nonmoving party to go beyond the pleadings and 'come forward with specific facts showing that there is a genuine issue for trial.'" *Santini*, 795 F.3d at 416 (internal quotation marks omitted) (*quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

At the summary judgment stage the court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249 (citations omitted); *Jiminez v. All American Rathskeller, Inc.*, 503 F.3d 247, 253 (3d Cir. 2007). In doing so, the court must construe all evidence in the light most favorable to the non-moving party. *Santini*, 795 F.3d at 416.

## III.  DISCUSSION

Plaintiff alleges that Defendant violated the ADA and PHRA[1] by (1) discriminating against him due to his disability and failing to accommodate his disability, and (2) retaliating against Plaintiff for requesting a reasonable accommodation. Defendant moves for summary judgment on each of these claims because it believes there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law because Plaintiff fails to establish the prima facie case for both disability discrimination and retaliation. The Court will address each of Defendant's arguments in turn.

To prevail on disability discrimination and retaliation claims under the ADA and the PHRA, a plaintiff must establish that he suffered an adverse employment action. *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999); *Kaniuka v. Good Shepherd Home*, No. 05-CV-02917, 2006 WL 2380387, at *5 (E.D. Pa. 2006). Therefore, a dispute regarding whether an adverse employment action occurred could create a genuine issue of material fact.

Conflicting deposition testimony unsupported by record evidence may create a genuine issue of material fact, and the Court cannot determine which version is credible at the summary judgment stage. *See Howard v. Blalock Elec. Serv. Inc.*, 742 F. Supp. 2d 681, 707 (W.D. Pa. 2010) ("A trier of fact would have to discredit [Defendant's] testimony in order to credit

---

[1] ADA and PHRA claims are evaluated identically. *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999).

[Plaintiff's] testimony. This Court cannot make credibility-related findings when ruling on a motion for summary judgment."); *citing Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1024 (3d Cir. 2008) (finding that the District Court's rejection of defendants' deposition testimony when ruling on a summary judgment motion was an inappropriate credibility determination). However, if a party only presents self-serving deposition testimony and the opposing party provides conflicting deposition testimony supported by record evidence, a genuine issue of material fact may not exist. *See Irving v. Chester Water Auth.*, 439 Fed. Appx. 125, 127 (3d Cir. 2011) ("In light of both his earlier testimony and the other [contradictory] record evidence, [plaintiff's] self-serving deposition testimony is insufficient to raise a genuine issue of material fact."). If both parties present conflicting deposition testimony supported by record evidence, then a genuine issue of material fact exists and summary judgment cannot be granted. *See Tunis Bros. Co., Inc. v. Ford Motor Co.*, 696 F. Supp. 1056, 1061 (E.D. Pa. 1988) (conflicting depositions, affidavits, and economic data presented by both parties created a genuine issue of material fact.).

There is conflicting deposition testimony regarding whether adverse employment action occurred. Plaintiff testified that Gioioso terminated his employment during the April 25th phone call, thus adverse employment action occurred. Gioioso testified that adverse employment action did not occur because Plaintiff effectively resigned during the phone call by stating he was unable to return to work. Plaintiff claims that he told Gioioso that he would return to work after his appointment on May 15, 2014, relying on a previous conversation with his Doctor. Defendant contends that Plaintiff's deposition testimony is the only piece of record evidence demonstrating that Plaintiff would be able to return to work by that date. All other medical records support Defendant's recitation of the facts, as they demonstrate that Plaintiff would return to work, if at all, no earlier than August 2014. Therefore, Defendant argues, Plaintiff could not have

reasonably believed and expressed to Gioioso that he was capable of returning to work in May 2014. Because Plaintiff's deposition testimony is self-serving and is not supported by record evidence and Defendant's deposition testimony is supported by record evidence, Defendant asks this Court to find that there is no genuine issue of material fact.

In *Howard*, the court declined to grant summary judgment because the trier of fact would have to discredit one party's testimony in order to credit the other's version of the events. Like in this case, the court was confronted with conflicting deposition testimony wherein the defendant claimed that the plaintiff resigned and the plaintiff claimed that the defendant terminated him. *See Howard*, 742 F. Supp. 2d at 707. Defendant argues that *Howard* is unlike this case because in *Howard* there was no record evidence to credit or discredit either party's version of events. While this Court recognizes that there is evidence in the record which supports the conclusion that Plaintiff could not return to work, if at all, until August 2014, at this stage the Court cannot make a credibility assessment as to what Plaintiff could have reasonably believed and therefore actually said to Gioioso during the April 25th phone call.

Viewing the evidence regarding the phone call in the light most favorable to Plaintiff, the Court is convinced that a reasonable trier of fact could find Plaintiff's recitation of the facts to be accurate. Therefore, there is a genuine issue of material fact and the Court will address the disability discrimination and retaliation claims in turn.

   A. **Disability Discrimination**

Under the ADA, it is unlawful for an employer to discriminate "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42

U.S.C. § 12112(a). An employer also discriminates against a qualified individual with a disability by failing to make a reasonable accommodation for the disabled individual's limitations unless the accommodation "would impose an undue hardship on the operation of the business of the [employer].'" *See* 42 U.S.C. § 12112(b)(5)(A).

A plaintiff must first establish a prima facie case of discrimination. *Makkay v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008). Once a plaintiff establishes the prima facie case, "the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action [or lack of accommodation]." *Id.* If the defendant can articulate a legitimate reason for the adverse action, "the burden shifts back to the plaintiff to show that the defendant's proffered reason is merely pretext for intentional discrimination." *Id.*

### a. Prima Facie Case

To satisfy the prima facie case under the ADA, a plaintiff must demonstrate that "(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, **with or without reasonable accommodations** by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination." *Taylor*, 184 F.3d at 306 (emphasis added). At the prima facie stage, "the goal…is to 'eliminate…the most common nondiscriminatory reasons' for the defendant's actions; by doing so, the prima facie case creates an inference that the defendant's actions were discriminatory." *Anderson*, 621 F.3d at 271 (*quoting Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981).

Defendant concedes that Plaintiff is disabled within the meaning of the ADA. A disability under the ADA substantially impairs one or more of an individual's life activities. 42 U.S.C. § 12102(2)(A). It is clear that Plaintiff satisfies the first prong of the prima facie case because

CAD substantially impairs one or more of Plaintiff's life activities, including the normal functioning of Plaintiff's cardiovascular system.

In regards to the second prong, a qualified individual is "[a]n individual with a disability who, with or without reasonable accommodation, can perform essential functions of the employment position that individual holds or desires." *Gaul v. Lucent Tech. Inc.*, 134 F.3d 576, 579 (3d Cir. 1998) (citing 42 U.S.C. § 12112(a)). An individual is qualified to perform the essential functions of the job if (a) the individual has the appropriate prerequisites, such as the appropriate educational background, employment, skills and licenses, and (b) the individual has the ability to perform the essential functions of the job, with or without accommodations, at the time of the employment decision.[2] *Id.* at 580.  With regards to accommodations, requests for limited periods of medical leave are considered reasonable accommodations, whereas requests for indefinite medical leave are not reasonable. *Aspen v. Wilhelmsen Ships Ser.*, No. 13-6057, 2015 WL 1020660, at *5 (E.D. Pa. 2015).

Defendant concedes that Plaintiff has the appropriate prerequisites to perform his job as a Personnel Supervisor. However, Defendant argues that Plaintiff could not perform the essential functions of his position with or without the reasonable accommodation of an extension to his medical leave period. Available medical information provided that Plaintiff was not healthy enough to return to work in a determinate amount of time; therefore he could not perform the essential functions of his position. At the time of the April 25th call, there was no projected date to return to work, on light duty status or otherwise. Additionally, Defendant claims that Plaintiff relayed that he would not be able to return to work at all during the April 25th phone call. Defendant claims that even if Plaintiff's medical leave was extended such that Plaintiff's doctor

---

[2] Plaintiff and Defendant may only rely on evidence accessible at the time of the employment decision. *Jacoby v. Bethlehem Suburban Motor Sales*, 820 F. Supp. 2d 609, 621-622 (E.D. Pa. 2011). Therefore, any documentation or evidence dated after the May 13, 2014 termination letter does not factor into the analysis.

could examine him during his May 15, 2014 appointment, all the record evidence shows that Plaintiff was not healthy enough to return in the foreseeable future.

Plaintiff claims that he could have performed his job with the reasonable accommodation of a finite extension to his medical leave. During the April 25th phone call, Plaintiff requested a ten day extension to his May 5th medical leave deadline. This would have given Plaintiff time to attend his May 15th appointment, during which Plaintiff believed he would have received permission to return to work on a light duty status. Additionally, the essential functions of his role as Personnel Supervisor were maintainable under light duty status. Plaintiff was restricted from heavy lifting, but this was not an essential function of his supervisory role. Plaintiff claims that Defendant failed to engage in an interactive process to determine whether a reasonable accommodation was available by refusing to discuss Plaintiff's request for a brief extension.

The conflicting deposition testimony regarding whether Plaintiff asked for a finite medical leave extension or stated that he could return to work makes it unclear whether reasonable accommodations were made to enable Plaintiff to perform the essential functions of his job. Thus, a genuine issue of material facts exists as to the second prong.

In regards to the third prong, the plaintiff must establish that he suffered from an adverse employment action. *Taylor*, 184 F.3d at 306. An adverse employment action under a disability discrimination claim is any action taken by the employer that is "serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir. 2001). Based on Defendant's version of the April 25th call, an adverse action did not occur because Plaintiff effectively resigned by stating that he could not return to work. Plaintiff asserts an adverse action occurred because he stated that he wanted to return to work, yet Defendant replied that he had no options, effectively

terminating him during the April 25th call. In addition, Plaintiff received a termination letter on May 13, 2014. Whether the third prong is satisfied depends on whether Plaintiff resigned or was terminated. The conflicting deposition testimony regarding the April 25th call leaves this unclear. Thus, a genuine issue of material facts exists as to the third prong.

### b. Legitimate Non-Discriminatory Reason for Termination

Once the plaintiff establishes the prima facie case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. *Makkay*, 541 F.3d at 214. The defendant does not have to show that the proffered reason *actually* motivated its decision for the adverse employment action. *See Fuentes v. Perskie*, 32 F.3d 759, 763 (3d. Cir. 1994).

Defendant claims Plaintiff failed to demonstrate that he could return to work in a finite period of time. Defendant was not required to accommodate Plaintiff by granting him an indefinite period of time to return to work. *See Apsen*, 2015 WL 1020660 at *5 (citing *Fogelman v. Greater Hazleton Health Alliance*, 122 F. App'x 581, 586 (3d Cir. 2004) (stating that an indefinite or open-ended leave of absence does not constitute a reasonable accommodation). Defendant claims that the employment action that followed the April 25th call was ordinary course of business when an employee could not demonstrate their ability to perform the work. If Plaintiff requested indefinite medical leave, Defendant had a legitimate, non-discriminatory reason for termination. If Plaintiff requested finite medical leave, it is arguable that Defendant did not have a legitimate, non-discriminatory reason for termination. Though the conflicting testimony makes it unclear whether Plaintiff requested a finite or infinite extension to his medical leave, the factual inquiry has proceeded "to a new level of specificity[,]" thus, Plaintiff must have "a full and fair opportunity to demonstrate pretext." *Burdine*, 450 U.S. at 255-256.

### c. Pretext

If a legitimate reason for the employment action is articulated, the burden shifts back to plaintiff to demonstrate that the reason is merely pretextual. *Fuentes*, 32 F.3d at 764. For a plaintiff to "defeat summary judgment . . . [he] must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve [Defendant's] articulated legitimate reason[]; or (2) believe that an invidious reason was more likely than not a motivating or determinative cause of [Defendant's] action." *Id.* Pretext for intentional discrimination may be established by showing inconsistencies in the employer's proffered reason. *Id.* at 765; *Abramson v. William Paterson College of New Jersey*, 260 F.3d 265, 284 (3d Cir. 2001).

The focus of this Court's inquiry is not "whether the employer made the best, or even a sound, business decision; [but] whether the real reason is [discrimination]." *Keller v. Orix Credit All., Inc.*, 130 F.3d 1101, 1109 (3d Cir. 1997) (quoting *Carson v. Bethlehem Steel Corp.*, 82 F.3d 157, 159 (7th Cir. 1996)). This Court must determine whether Plaintiff "demonstrate[d]such weaknesses, implausibilies, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them 'unworthy of credence.'" *Fuentes*, 32 F.3d at 765 (emphasis in original) (quoting *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 531 (3d Cir. 1992)). In other words, "the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that *each* of the employer's proffered non-discriminatory reasons . . . was either a *post hoc* fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext)." *Id.* at 764 (emphasis in original). The Court's task is to determine whether the facts and all reasonable inferences taken in "the light most favorable to

the plaintiff create[] a genuine issue of material fact as to whether the employer intentionally discriminated against the plaintiff." *Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986). Thus, this Court must determine whether Plaintiff sustained his burden of showing that Defendants' legitimate, nondiscriminatory reasons for terminating Plaintiff was pretextual.

The first manner in which Plaintiff may demonstrate that Defendants' reason for terminating Plaintiff was pretextual is by pointing to evidence that would permit the factfinder to reasonably disbelieve Defendants' reason for terminating Plaintiff. *Fuentes*, 32 F.3d at 764. In order "[t]o discredit the employer's proffered reason, however, the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." *Id.* at 765. If Plaintiff can provide "evidence that would cause a reasonable factfinder to find the defendant's proffered reason 'unworthy of credence,' [he] need not adduce any evidence of discrimination beyond [his] prima facie case to survive summary judgment." *Burton*, 707 F.3d at 430 (quoting *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 310 (3d Cir. 2012)).

Plaintiff argues that the inconsistencies in Defendant's proffered reasons for the employment action would permit the factfinder to reasonably disbelieve Defendant's proffered reasons for terminating Plaintiff. Defendant provides two reasons for the loss of employment: (1) Plaintiff effectively resigned, and (2) Plaintiff was terminated because he failed to provide a return to work date. Plaintiff claims it is reasonable for the factfinder to disbelieve Defendant's articulated legitimate reasons as they are in direct conflict with each other.

The second manner in which Plaintiff may demonstrate that Defendant's reason for terminating Plaintiff was pretextual is by pointing to evidence that would permit the factfinder to

13

"reasonably . . . believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes*, 32 F.3d at 764. Plaintiff argues that an invidious reason may have motivated Defendant's decision not to rehire Plaintiff in September 2014, given Gioioso's negative comments about his health. When Plaintiff phoned his former supervisor inquiring about jobs in September 2014, Gioioso stated that he doubted Plaintiff had a clean bill of health despite the supervisor's assurance that Plaintiff was healthy. Plaintiff argues that these comments make clear that Gioioso did not want to rehire Plaintiff because of his disability, regardless of whether he was qualified and able to perform the essential functions of the job.

It is not for this Court to "'sit as a super-personnel department that reexamines an entity's business decisions.'" *Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 332 (3d Cir. 1995) (quoting *McCoy v. WGN Cont'l Broad. Co.*, 957 F.2d 368, 373 (7th Cir. 1992)). Instead, this Court must determine "'whether the employer gave an honest explanation of its behavior'" that is not discriminatory. *Id.* (quoting *McCoy*, 957 F.2d at 373). Whether Plaintiff sustained his burden of showing that Defendant's legitimate, nondiscriminatory reasons for terminating Plaintiff was pretextual hinges on which parties' recitation of the facts is accurate. Because this Court cannot engage in a credibility determination at this stage, a genuine issue of material fact exists as to pretext.

This Court finds that there are genuine issues of material fact as to the prima facie case, the proffered legitimate, non-discriminatory reasons for termination, and Plaintiff's claims of pretext. Therefore, Defendant's motion as to the disability discrimination claim is denied.

B. **Retaliation**

To establish a prima facie case for retaliation under the ADA, the plaintiff must show: 1) he engaged in an ADA protected activity, (2) he suffered an adverse employment action by the defendant employer (before or after the protected activity), and (3) there is a causal connection between the protected activity and the adverse employment action. *Kaniuka*, 2006 WL 2380387 at *5.

To satisfy the first prong, the plaintiff must demonstrate he was engaged in activity protected by the ADA. *Kaniuka*, 2006 WL 2380387 at *5. Requests for finite medical leave are considered reasonable accommodations. *Apsen*, 2015 WL 1020660 at *5. An employee's request for reasonable accommodation is an ADA protected activity. *Jackson v. J. Lewis Crozer Library*, 445 Fed. Appx. 533, 536-37 (3d Cir. 2011). However, asking for an infinite or indeterminate medical leave does not qualify as a reasonable accommodation. *Aspen*, 2015 WL 1020660 at *5.

Defendant complied with all reasonable accommodations by previously granting Plaintiff's requests for finite medical leave. Unlike the previous requests, Defendant argues that Plaintiff's request during the April 25th call was for an indefinite extension because he did not know when he would be able to return to work. Plaintiff claims the request was for a finite extension; until he received an updated medical evaluation on May 15th. The conflicting testimony regarding whether Plaintiff requested a finite or infinite extension to his medical leave makes it unclear whether the first prong is satisfied. Thus, a genuine issue of material facts exists as to the first prong.

The second prong requires that a plaintiff demonstrate he suffered an adverse employment action. *Kaniuka*, 2006 WL 2380387 at *5. Based on Defendant's version of the April 25th call, Plaintiff effectively resigned when he stated that he could not return to work.

15

However Plaintiff believed he was terminated during the call. On May 13, 2014, Plaintiff received a termination letter. Though Plaintiff received a termination letter, the conflicting testimony regarding whether Plaintiff resigned or was terminated makes it unclear whether the second prong is satisfied. Thus a genuine issue of material facts exists as to the second prong.

The third prong requires that a plaintiff establish a causal link between the protected activity and the adverse employment action. *Kaniuka*, 2006 WL 2380387 at *5. Proximity between the protected ADA activity and adverse action is evidence of causation. *Fasold v. Justice*, 409 F.3d 178, 189-90 (3d Cir. 2005). Defendant asserts no adverse action occurred because Plaintiff terminated the employment relationship by effectively resigning. Plaintiff argues he engaged in protected activity by requesting finite medical leave, and was subsequently terminated. Eighteen days after the phone call, Plaintiff received a termination letter. It could be argued that the proximity in time between the April 25th call and Plaintiff's receipt of the termination letter is conclusive evidence of a causal link; however it is unclear whether Plaintiff actually resigned during the phone call. Thus, a genuine issue of material facts exists as to the third prong.

This Court finds that there are genuine issues of material fact as to Plaintiff's retaliation claim. Therefore, summary judgment as to this claim is denied.

**IV.    CONCLUSION**

For the reasons set forth herein, this Court concludes that Plaintiff has presented specific facts to show there is a genuine issue for trial. Therefore, Defendant's Motion for Summary Judgment is DENIED. An appropriate order follows.